In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3917

BARBARA J. CASTILE,

*Plaintiff-Appellant,*

*v.*

MICHAEL J. ASTRUE, Commissioner of
the Social Security Administration,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:09-cv-0023—**David F. Hamilton**, *Judge.*

ARGUED JUNE 2, 2010—DECIDED AUGUST 13, 2010

Before EASTERBROOK, *Chief Judge,* and POSNER and
KANNE, *Circuit Judges*.

KANNE, *Circuit Judge.* Barbara Castile filed numerous
claims under Title II of the Social Security Act in accor-
dance with the process proscribed by the Social Security
Administration ("SSA") for obtaining disability insurance
and disability widow's benefits. All of her claims were
denied at each of the SSA's administrative levels. On

subsequent judicial review by the district court, the SSA's denials were affirmed. Castile now appeals her claims for the sixth time, alleging that the district court erred in affirming the denials. We affirm.

## I. BACKGROUND

As part of its review of the SSA's determination, the district court undertook a comprehensive review of Castile's medical and vocational history. Included in this review was the administrative law judge's ("ALJ") application of the required five-step sequential analysis to Castile's personal history. Because of the exhaustive nature of the district court's review, we adopt this background discussion in its entirety, as contained in *Castile v. Astrue*, No. 1:09-cv-0023, 2009 WL 3676645 (S.D. Ind. Nov. 2, 2009). Nevertheless, we feel it is appropriate and have chosen to set forth herein a summary of the procedural history of this appeal.

On March 20, 2002, Castile filed applications for Social Security disability insurance benefits and disabled widow's benefits under Title II of the Social Security Act. Castile alleged that her disability began on March 20, 2001, due to a combination of fibromyalgia, arthritis, chronic fatigue, depression, obesity, high blood pressure, anxiety, and sleep apnea, among other maladies. At the date of the onset of her alleged disability Castile was 49 years old, an age classification associated with a "younger individual" under the Social Security Act. Her claims were initially denied on June 21, 2002, and were again denied upon reconsideration on November 13,

2002. Dissatisfied with these determinations, Castile subsequently requested and received an administrative hearing at which she appeared with an attorney and presented testimony. Her claims were denied by the ALJ on June 9, 2003. Castile then requested review by the SSA's Appeals Council. The Council remanded the matter to the ALJ with instructions to obtain additional evidence.

A supplemental hearing was convened on March 3, 2006. An exhaustive amount of evidence was presented, including additional medical records, medical expert testimony, and vocational expert testimony. Castile was again represented by counsel. In conducting the five-step sequential analysis to determine disability as required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found that Castile had not engaged in substantial gainful activity since the alleged onset date of her disability (step one); Castile suffered from the "severe" impairments of hypertension, sleep apnea, obesity, fibromyalgia, and depression, but Castile's chronic fatigue syndrome was not severe (step two); and that none of Castile's impairments, either alone or in combination, qualified as a listed impairment (step three). The ALJ then examined Castile's residual functioning capacity and concluded that she could perform her past relevant work as an order clerk (step four). Because the ALJ determined Castile was not disabled at step four, he was not required to and did not proceed to step five.

On February 12, 2007, the ALJ, acting on behalf of the SSA's Commissioner, again denied Castile's applications. The ALJ concluded that Castile was not disabled as the

meaning of that term is defined under the Social Security Act because her impairments did not meet or equal any listed impairment, and she remained capable of performing her past relevant work as an order clerk. The Council declined Castile's request for further review, thereby making the ALJ's decision the final decision of the Commissioner.

On January 8, 2009, Castile filed a civil action in the district court seeking judicial review of the Commissioner's decision. On November 2, 2009, the district court found that the ALJ's findings were supported by substantial evidence and issued an Entry on Judicial Review and Final Judgment affirming the Commissioner's final decision.

## II. ANALYSIS

On appeal, Castile presents arguments identical to those addressed by the district court. Castile argues again that the ALJ erred at step two of the evaluation by determining that her chronic fatigue syndrome was not "severe." Castile next argues that the ALJ failed to give sufficient weight to the effect of her obesity on her ability to work. Lastly, Castile argues that the ALJ's credibility finding was improperly articulated and unreasonable. We take each argument in turn.

### A. Standard of Review

We review *de novo* the district court's judgment affirming the Commissioner's final decision, *Dixon v.*

*Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001), and will uphold the Commissioner's decision so long as the ALJ applied the correct legal standard and substantial evidence supported the decision, *see Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Skinner*, 478 F.3d at 841 (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "When reviewing for substantial evidence, we do not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Id*.

We note that on appeal Castile primarily addresses the ALJ's decision without discussing the district court's analysis of that decision. While not legally flawed, we have previously indicated that such an approach is a "risky tactic," especially in a case such as this where the district court judge issued a "thorough and persuasive opinion." *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005).

### B. *Chronic Fatigue Syndrome*

Castile argues that the ALJ erred by finding that her alleged chronic fatigue syndrome was not a severe impairment. She contends that her claimed chronic fatigue syndrome by itself renders her incapable of performing work.

Procedurally, the ALJ is required to determine at step two of the sequential analysis whether the claimant in

fact has an impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The burden, however, is on the claimant to prove that the impairment is severe. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). A severe impairment is an impairment or combination of impairments that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); *cf.* 404.1521(a). As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process. 20 C.F.R. § 404.1523; *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the *aggregate* effect of the entire constellation of ailments—including those impairments that in isolation are not severe."). Therefore, the step two determination of severity is "merely a threshold requirement." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999).

Although the ALJ found that Castile has numerous severe impairments, his findings also indicated that Castile's chronic fatigue syndrome was not severe because it did not more than minimally affect her ability to perform basic sedentary work activities. In addition, the ALJ noted that the record was devoid of any medical laboratory test results to support her claim. The ALJ also observed that although Castile had complained of chronic fatigue syndrome since 1997, she continued working, and she apparently felt well enough to apply for work as late as January 2002. Finally, the ALJ noted that there were no records whatsoever of any physical complaints since August 2003.

We agree with the district court that there was substantial evidence to support the ALJ's conclusion. Regardless, this particular determination is of no consequence with respect to the outcome of the case. Because the ALJ recognized numerous other severe impairments, he was obligated to proceed with the evaluation process. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of the entire constellation of ailments."). Accordingly, in step four of the evaluation, the ALJ properly considered Castile's chronic fatigue syndrome along with her other severe and non-severe impairments in determining whether Castile could perform her past work.

Castile further contends that her chronic fatigue syndrome, in combination with her other impairments, rendered her disabled because such impairments cause a level of absenteeism that makes it impossible for her to perform acceptable work. Therefore, Castile argues, the ALJ erred as a matter of law and fact because the ALJ improperly evaluated the limiting effects of her chronic fatigue syndrome. It is Castile, however, who bears the burden of proving that she is disabled, and she failed to present any medical evidence linking her chronic fatigue syndrome to the unacceptable level of absenteeism she alleges. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a). Contrary to her claims, none of Castile's treating physicians opined that she was incapable of working. In fact, medical expert Dr. Emily Giesel opined that Castile's aliments did not meet the definition of any

of the disability listings, and that she was capable of performing the full range of sedentary work.

As previously discussed, the ALJ observed that Castile continued working after the alleged onset of her chronic fatigue syndrome in 1997. In fact, the ALJ noted that Castile even applied for other work in January 2002, which was after her alleged disability onset date. Castile argues, weakly we think, that since continuous deterioration is not a characteristic of chronic fatigue syndrome, the fact that she resumed work and applied for work on another job is not indicative of the tolerability of her condition or her actual ability to work. Not only does Castile fail to provide any evidence to support this argument, but such an assertion flies in the face of her claim that it is "impossible" for her to work at all. We believe that Castile's continued employment is a factor supporting the ALJ's determination, especially because no evidence was presented to show that her conditions worsened.

Contrary to Castile's claims, we find that the ALJ considered all available evidence involving her chronic fatigue syndrome, and that there was substantial evidence supporting the ALJ's conclusion that Castile's long-standing complaints did not render her disabled.

### C. Obesity

Although the ALJ found that Castile's obesity was a severe impairment at step two, the ALJ concluded at step three that Castile's impairments, including her obesity

alone or in combination with her other impairments, did not rise to the medical definition of any currently listed impairment. Castile argues that the ALJ erred in this evaluation of her obesity. She claims that the ALJ failed to give sufficient weight to the effect of her obesity on her ability to work and that the ALJ failed to articulate any reasons for his conclusion.

Both the ALJ and the district court noted the strikingly relevant fact that the SSA has removed obesity as a separate listing from the list of disabling impairments. Social Security Ruling 02-1p, 67 Fed. Reg. 57,859 (2002).

However, in accordance with that Ruling, the ALJ is required to and did in fact consider Castile's obesity in evaluating the severity of her other impairments. In particular, the ALJ noted that he "considered her obesity using the criteria of the musculoskeletal, respiratory, and cardiovascular impairments under Listings 1.00Q, 3.00I, and 4.00F, respectively." The ALJ further considered her obesity when he found to Castile's benefit, insofar as any present and future work are concerned, that her residual functioning capacity is limited to sedentary work. But he also found that it is not a qualifying disability. The ALJ explicitly noted that

> the evidence shows the claimant is obese. . . . [But] the objective evidence does not document any disabling functional limitations. During her consultative examinations, she could walk without assistance with no ataxia or unsteadiness. She could hop and even squat. The claimant has been obese since 1995 and was able to work. Therefore, I find no additional

limitations, other than her restriction to sedentary work, are warranted based on her obesity.

Castile also contends that the ALJ ignored the effect of her obesity in combination with her chronic fatigue syndrome. This is not correct. The ALJ noted that "[a]s to factors that precipitate and aggravate the symptoms, the claimant's fatigue, pain and obesity were considered in assigning her to the least strenuous level of exertion." With respect to treatment Castile received for her weight, fatigue, pain and other symptoms, the ALJ stated that Castile "has been advised to exercise and lose weight but has repeatedly failed to do either."

Although the ALJ recognized that Castile was obese, the ALJ observed that "she functioned with her obesity prior to her alleged onset date . . . [and] there is no indication in the record that any . . . physician has advised the claimant to restrict her activities or observe any precautions." In fact, in considering the constellation of Castile's impairments, the ALJ found that "no treating physician has submitted an opinion that the claimant is incapable of working."

Castile's claim with respect to her obesity is without merit. The ALJ properly recognized Castile's condition, considered all the evidence, and provided a thorough discussion. As the district court noted, the ALJ's conclusion that Castile was not prevented by her impairments from performing her past work was supported by substantial evidence. Accordingly, the district court did not err in agreeing with the ALJ's obesity finding.

*D.  Credibility Determination*

Castile argues that the ALJ erred by improperly dis-counting her testimony and failing to articulate reasons for finding she was not credible. However, the ALJ specifi-cally stated that

> based on the objective medical and other evidence of record, I do not find [Castile's] allegation of pain and other symptoms entirely credible to the point that they would prevent competitive work. I recognize the claimant's primary complaint is pain. However, discomfort alone does not estab-lish disability. Disability requires more than mere inability to work without pain.

The ALJ's credibility determinations are entitled special deference, *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be dis-turbed by a reviewing court, lacking as it does the op-portunity to observe the claimant testifying."); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000), but the ALJ is still required to "build an accurate and logical bridge between the evidence and the result . . . ." *Shramek*, 226 F.3d at 811 (internal quotation marks omitted). "In ana-lyzing an ALJ's opinion for such fatal gaps or contradic-tions, we give the opinion a commonsensical reading rather than nitpicking at it." *Id*. (internal quotation marks omitted). Accordingly, we will overturn the ALJ's credi-bility determinations only if they are "patently wrong." *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008).

Castile contends that the ALJ failed to consider any evidence that potentially supported her claim of disability.

In fact, the ALJ gave full credit to Castile's reports of pain and functional limitations in assessing her residual functioning capacity. It was because of and not in spite of Castile's testimony that the ALJ limited her to a more restrictive residual functional capacity finding than any physician on the record. In particular, the ALJ discussed at length Castile's history of complaints and medical attention. The ALJ noted that "Castile has complained of fatigue since at least 1995." The ALJ noted that Castile was diagnosed with sleep apnea in 1998. The ALJ then discussed in detail an examination of Castile by Dr. Chamoun on April 23, 2002, during which Castile's complaints of symptoms consistent with fibromyalgia and irritable bowel syndrome were communicated to and discussed with Dr. Chamoun. The ALJ observed that at that examination

> [Castile] was obese and alleged obstructive sleep apnea and was on CPAP. . . . She reported hypertension and migraine attacks. She was told she had chronic fatigue syndrome and reported she had no energy during the day. She reported low back pain. . . . She said she has hyperlipidemia and was depressed. She complained of very sharp atypical chest pain, unpredictable at rest or with exertion.

The ALJ also discussed at length Castile's fibromyalgia claim. The ALJ noted testimony and evidence from numerous other physician appointments, including a report from Dr. Bruce Bender stating that he prescribed Seroquel for Castile's reported insomnia; a report by Dr. Greenbaum wherein he found 18 out of 18 tender

points, although he concluded they were only "mildly" tender; evidence of elevated blood pressure and use of Zomig for migraines; and an MRI of the lumbar spine which showed evidence of moderate degenerative change at L5-S1. Finally, the ALJ addressed with particularity Castile's testimony relating to all of her alleged impairments.

Nevertheless, based on objective evidence and common sense, the ALJ reasonably concluded that Castile's litany of alleged pain and other symptoms were "not entirely credible" insofar as establishing proof of her inability to work. The ALJ found it illuminating and persuasive on its face that none of Castile's doctors opined that she was unable to work. Also casting doubt on Castile's credibility was a report from Dr. Dudly on June 30, 2000, which was cited by the ALJ and which stated that Castile "was also very noncompliant and very co-dependent with her husband and histrionic. It was noted she had accepted the sick role with open arms, liking the attention and medicine."

The record demonstrates that the ALJ thoroughly examined all of the medical reports and findings, and we specifically reference the following:

- Dr. Driehorst reported on July 11, 2000 that Castile had a normal range of motion, her strength was good, and he cleared her to return to work;

- Dr. Chamoun reported that Castile's "[g]ait and posture were normal . . . . She could stand and walk on heels, do tandem walking, hop-

ping and squatting. Range of motion was
normal. Muscle strength and tone were
normal . . .";

- Dr. Bender reported her hypertension was
  well controlled on medication, and her
  fibromyalgia was stable;

- Dr. Driehorst reported that he found nothing on
  Castile's MRIs that would preclude her working
  as a bank teller;

- Castile uses a cane, although she has never
  received a prescription for one;

- Castile complained of shortness of breath, but
  an inhaler was not on her list of medications;

- a CT scan of Castile's head was negative, and
  she reported headache relief from taking
  Imitrex and Fiorinal; and

- no medical evidence was presented to support
  her claims of diarrhea four to five times a day.

The ALJ also found it particularly instructive that
Castile either refused or utterly failed to adhere to
the treatment programs prescribed by her physicians.
The ALJ noted that "she was referred to physical
therapy and a pain clinic but did not attend. She has
been advised to exercise and lose weight but she has
repeatedly failed to do either." The ALJ also made note
of the fact that despite Castile's alleged pain and
other impairments, she repeatedly made excuses for not
attending doctors' appointments. In fact, the record

indicates that the last time Castile saw a physician was in August 2003.

The ALJ then addressed Castile's testimony describing her daily activity. Although Castile testified that she was incapable of doing anything around the house, the ALJ observed that she "does her own laundry and puts dishes in the dishwasher. She attends birthdays of her grandchildren. She has a dog she must take care of." The ALJ again took note of the fact that Castile was applying for jobs in 2002, following her alleged onset date. The ALJ concluded that the weight of the objective evidence, as well as Castile's own inconsistent testimony, did not support her disability claim.

We find that the ALJ thoroughly examined the evidence and clearly articulated his findings; therefore, the district court did not err in upholding the ALJ's credibility determinations.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment upholding the Commissioner's final decision denying Castile's applications for disability insurance benefits and disabled widow's benefits.