**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1350
_____

CHRISTINE E. DIMTER,
Appellant

v.

COMMISSIONER SOCIAL SECURITY

_____

On Appeal from the United States District Court for the
District of New Jersey
(District Court No. 1-22-cv-06704)
District Court Judge: Hon. Karen M. Williams
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 5, 2024

(Filed: December 5, 2024)

Before: KRAUSE, SCIRICA, and RENDELL, *Circuit Judges*.
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, *Circuit Judge*.

Christine Dimter appeals from a partial denial of Social Security Disability benefits. Following remand from the District Court in a prior civil action, an administrative law judge ("ALJ") at the Social Security Administration found Dimter not disabled under the Social Security Act for a period of time ending August 3, 2020. *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). The District Court upheld that decision. Because the ALJ's decision correctly applied the law and is supported by substantial evidence, we will affirm the District Court's order.

I.

Dimter first applied for Social Security Disability benefits in 2014 based on injuries she sustained in 2012. Previously, Dimter had worked as a server in a restaurant and briefly as a house cleaner.

An ALJ initially found Dimter not disabled. In a prior civil action, the District Court vacated that decision and remanded for the ALJ to reevaluate the evidence under the "treating physician rule" of 20 C.F.R. § 404.1527(c)(2), which required the ALJ to give "'controlling weight' to the opinion of a treating physician unless that opinion is not supported by 'medically acceptable clinical and laboratory diagnostic techniques [or] is . . . inconsistent with the other substantial evidence in . . . [the] record.'" *Dimter v. Comm'r, Soc. Sec. Admin.*, No. 18-cv-16233, 2019 WL 5968230, at *3 (D.N.J. Nov. 13, 2019) (alterations in original). On remand, the ALJ issued a decision that was partially favorable and partially unfavorable to Dimter. In the portion of that decision presently under review, the ALJ concluded Dimter was not disabled before August 4, 2020.

2

Dimter's objections on appeal relate to the ALJ's findings regarding her ability to use her right hand.

According to the evidence before the ALJ, examinations through Virtua Health System ("Virtua") from 2013 to 2021 by Dimter's treating physician, Dr. Mirela Draganescu, M.D., indicated Dimter had mild weakness in her right arm and suffered from "'mildly' decreased fine motor skills." SA21. Dimter underwent physical consultations in 2014 and 2019 with Dr. Juan Carlos Cornejo, D.O., who observed Dimter was able to extend her fingers, make a fist, and touch her thumbs to her fingers. Another 2014 exam by a different provider also noted no abnormalities in Dimter's use of her hand or arm. In 2016, Dr. Anush Doshi, M.D., examined Dimter and indicated a pinched nerve in her neck leading to pain in her right arm. Other consultations with another provider demonstrated swelling and tenderness in Dimter's right hand, which decreased over the year.

Dimter underwent electromyography ("EMG") and nerve compression studies in 2015 and 2018, the first revealing no evidence of nerve compression and the second demonstrating "mild" neuropathy consistent with carpal tunnel syndrome. SA12. A 2015 X-ray indicated some deterioration of her thumb knuckle joint but without broken or dislocated bones. In 2016, Dimter underwent an MRI, which showed "mild" indicia of synovitis between her right index finger and palm. *Id.* Another X-ray in May 2021 revealed "minor" and "moderate" changes to her right hand: "moderate" narrowing of the space in the thumb joints and "hypertrophic changes," "mild" subluxation of the thumb,

3

and "minor" growth within the other fingers' joints. *Id.* These were "consistent with degenerative joint disease." *Id.*

Dimter testified she experienced multiple symptoms in her hands including numbness, swelling in the knuckles, shocks of pain from a pinched nerve in her neck, and arthritis in her right hand. She also testified she was unable to make a fist or effectively grasp objects.

The ALJ found Dimter had several impairments that met the threshold severity requirement of 20 C.F.R. § 404.1520(a)(4)(ii), but that none fit the categories of impairments that automatically entitle a claimant to a finding of disability under (a)(4)(iii).[1] The ALJ thus proceeded to evaluate Dimter's "residual functional capacity." SA9. As relevant here, the ALJ concluded Dimter was "able to frequently handle and feel." SA19. In reaching that decision, the ALJ considered Dimter's examination results as well as the evidence provided by the physicians. The ALJ found Dr. Cornejo's opinions to be somewhat useful and gave them some weight in her analysis. She gave little weight to Dr. Draganescu's opinion, which she found consisted of "conclusory" claims, ratings "based on [Dimter's] statements," and findings inconsistent with exam records from Virtua. SA29.

Finally, the ALJ determined that, before August 4, 2020, Dimter's residual functional capacity enabled her to perform "jobs that existed in significant numbers in the national economy," meaning she was not disabled before that date. SA33-34.

---

[1] Dimter applied for both Social Security Disability Insurance and Supplemental Security Income. The standards for a finding of disability are the same for present purposes.

II.[2]

A.

Dimter urges the ALJ misapplied the "treating physician rule" pursuant to 20 C.F.R. § 404.1527(c)(2), which applied to Dimter's claim because she filed it before March 27, 2017. Under that rule, the ALJ was obligated to credit Dr. Draganescu's opinion unless it was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or was "inconsistent with the other substantial evidence in . . . [the] record." *Id.*

The ALJ discounted Dr. Draganescu's opinion as "conclusory," mostly based on Dimter's self-assessment, and contradicted by exam records from Virtua, which documented less severe symptoms than those Dr. Draganescu described. SA29. Dimter objects that the ALJ only "compared Dr. Draganescu's determination to a single subset of the treating physicians, the primary care physicians" and "limited her review of the medical evidence to a subset of those records—the physical examinations." Appellant Br. 15. Dimter points out that other records were consistent with Dr. Draganescu's opinion, such as right arm EMGs showing loss of function of nerves to Dimter's right arm and Dr.

---

[2] The District Court had jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). We have jurisdiction under 28 U.S.C. § 1291. We conduct a "plenary review" of the ALJ's legal determinations while reviewing the ALJ's factual findings for "substantial evidence." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

Doshi's assessment of "neuroanatomic pain distribution" locating Dimter's pain to her right arm. *Id.* at 19-20.

To give Dr. Draganescu's opinion less than controlling weight, the ALJ needed to find it contradicted by "substantial evidence," § 404.1527(c)(2), but not necessarily all evidence. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. When the evidence points multiple ways, it is the role of the ALJ rather than the court to "weigh the evidence" and draw conclusions. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Here, there was evidence both supporting and contradicting Dr. Draganescu's opinion. The ALJ concluded that the Virtua records showed less severe impairments than Dr. Draganescu described, and the ALJ weighed Dr. Draganescu's opinion against that of Dr. Cornejo, who found Dimter generally able to use her right hand. The ALJ therefore did not err in giving Dr. Draganescu's opinion less than controlling weight.

### B.

Dimter next objects that the ALJ failed to consider whether three alleged impairments were "medically determinable." Those were: "(1) chronic pain syndrome; (2) right shoulder rotator cuff tendinitis and pain; and (3) right hand synovitis." Appellant Br. 5-6, 17.

A "severe medically determinable" impairment is a threshold requirement for obtaining disability benefits. 20 C.F.R. § 404.1520(a)(4)(ii). But if at least one impairment meets that threshold, the ALJ proceeds to evaluate the claimant's "residual

6

functional capacity" in light of "all the relevant evidence in [the] case record" regarding the claimant's "impairment(s), and any related symptoms." § 404.1545.

Here, the ALJ found Dimter to have several severe medically determinable impairments and thus proceeded to evaluate Dimter's residual functional capacity. That evaluation "accounted for [Dimter's] subjective allegations of symptoms in her right and left hand and allegations of difficulty with using her right and left hands." SA24. The ALJ discussed Dimter's pain and swelling and acknowledged that Dimter had "medically determinable impairments [that] could reasonably be expected to cause the alleged symptoms." SA20. While Dimter asserts the ALJ erroneously considered these symptoms one-by-one rather than cumulatively, she does not point to statements in the ALJ's decision supporting this characterization, and the ALJ stated her functional capacity evaluation would include "all of [Dimter's] impairments." SA9. Thus, the ALJ's determination of functional capacity would not have changed even if Dimter's other alleged impairments might have independently satisfied the threshold requirement of a "severe medically determinable" impairment. *See Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010).

## C.

Dimter's remaining objections do not warrant reversal.

Dimter objects that the ALJ made a factual error in stating "that the physical exams are mostly normal," Appellant Br. 16, referring to the ALJ's statements that "[t]he record . . . reveals a broad range of normal, albeit with some abnormal, findings," *e.g.*,

SA20. We do not read these statements as quantitative descriptions of the number of normal and abnormal findings.

Dimter further urges that it is "logically inconsistent" that the ALJ found more limitations in 2021 than in 2017 with no change in Dimter's residual functional capacity. Appellant Br. 20-21. In making this argument, Dimter does not specify which new impairments should have led to what changes in her functional capacity, and it is therefore too underdeveloped to serve as a basis for overturning the ALJ's decision.

Dimter also takes issue with the clarity of a sentence in the ALJ's written decision regarding why Dimter's carpal tunnel syndrome and degenerative joint disease were not severe. In this regard, the ALJ's decision is to be "read as a whole," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), and the ALJ's subsequent paragraphs clarify and provide details to support the ALJ's conclusion.

Next, Dimter accuses the ALJ of "equating Ms. Dimter's left and right hands." Appellant Br. 23. We read the ALJ only to say that her conclusion would be unchanged whether Dimter is right- or left-handed, as there were conflicting statements on this point from Dr. Draganescu.

Finally, we agree with Appellee that Dimter failed to preserve an objection to the ALJ terminating the hearing before the Government's vocational expert could testify. Dimter did not present this argument to the District Court, and the statements in her brief at most noted the fact that the ALJ refused to reconvene the hearing, without offering this fact as a ground for reversal. Preservation requires "the same 'theory' [to be] 'squarely'

8

raised in the trial court." *Spireas v. Comm'r of Internal Revenue*, 886 F.3d 315, 321 (3d Cir. 2018) (quoting *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 558 (3d Cir. 2017)).

## III.

For these reasons, we will affirm the judgment of the District Court.