NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 11, 2012
Decided January 15, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-2408

| | |
|---|---|
| MARIA DORNSEIF, <br>     *Plaintiff-Appellant*, | Appeal from the United States Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:11-cv-04335 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, <br>     *Defendant-Appellee.* | Amy J. St. Eve, <br>   *Judge*. |

**ORDER**

Maria Dornseif applied for disability benefits and supplemental security income, citing repeated seizures that caused her to fall or black out and a left-knee injury that made it hard for her to stand. The administrative law judge disbelieved Dornseif's allegations about the severity of her conditions and concluded that she could still work. On appeal she challenges, among other things, the ALJ's adverse credibility finding, failure to give controlling weight to her treating physician's opinion, failure to account for her obesity, and failure to obtain a medical source statement from a consultative physician. We affirm.

Dornseif, a fifty-seven-year-old presser at a dry cleaners, has suffered seizures since her twenties. The parties dispute the frequency and severity of the seizures, but Dornseif testified that they occur as often as three times a week. Alleging that her seizures made her disabled as of 2006, she applied to the Social Security Administration for disability benefits and supplemental security income.

After she filed her application, Dornseif dislocated her left knee when she slipped on ice and fell. The injury caused one of the arteries at the back of her knee to become blocked, necessitating emergency bypass surgery. Dr. Matthew Johnson, the attending physician who examined her and recommended surgery, monitored her recovery in the hospital and reported slow but gradual improvement. Since then, Dornseif asserts that she has had trouble standing for long periods of time. She characterized this lingering injury as another disabling condition.

In connection with Dornseif's application for benefits, two consulting physicians, filled out "physical residual functional capacity" assessments and opined that Dornseif was capable of working with minor limitations. Dr. Charles Wabner determined that she was fit for work that required only occasional awkward postures (e.g., balancing, kneeling, and crouching), due to her injured leg, and that she should avoid workplace hazards such as machinery and heights because of her seizures. Dr. Marion Panepinto, who had reviewed Dornseif's medical records before her knee injury, similarly found that Dornseif had occasional postural limitations and should avoid workplace hazards because of her seizure disorder. A third consultative physician, Dr. Albert Osei, performed a physical examination and found that her left leg's range of motion was limited and that she had difficulty squatting and hopping, but that she was otherwise mobile.

The ALJ concluded that Dornseif was not disabled and could perform medium work as defined in 20 C.F.R. § 404.1567(c). Applying the five-step evaluation the Administration uses for determining disability, *see* 20 C.F.R. § 404.1520(a), the ALJ found that Dornseif had not engaged in substantial gainful activity since the onset of her asserted disability (step one), suffered from severe impairments—the seizure disorder and knee injury (step two), but that these impairments did not meet or equal the criteria of an impairment listed in the agency's regulations (step three). The ALJ also found that Dornseif had the RFC to perform less than the full range of medium work, though she had no relevant past work experience (step four). Relying on the testimony of a vocational expert, the ALJ concluded that Dornseif could perform jobs that exist in significant numbers in the economy—such as steam press machine operator or kitchen helper and therefore was not disabled (step five). In reaching these findings, the ALJ stated that she found that Dornseif's testimony regarding the extent of her symptoms not credible because Dornseif had described her seizures as rare to treating physicians, including Dr. Johnson. The ALJ also discounted a letter from Dr. Johnson opining

about the debilitating nature of Dornseif's condition because Dr. Johnson had treated Dornseif only for her knee injury during her short hospital stay.

On appeal Dornseif first challenges the ALJ's credibility assessment, noting that the ALJ used boilerplate language that we have repeatedly criticized: "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." We have derided the agency's use of similar boilerplate language as "meaningless" because it "yields no clue to what weight the trier of fact gave the testimony." *E.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012); *Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010). But the boilerplate itself is not fatal if the ALJ supports her finding with additional reasons such as contradictory medical evidence. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Shideler v. Astrue*, 688 F.3d 306, 311–12 (7th Cir. 2012). The ALJ here properly discounted Dornseif's testimony of experiencing weekly seizures when she had repeatedly described her seizures to her treating physicians as rare.

Second, Dornseif contends that the ALJ should have given controlling weight to the opinion of Dr. Johnson, the attending physician who treated her knee injury at the hospital over a nine-day period and later wrote in a short "To whom it may concern" letter that she suffered from "a severe debilitating illness that prevents her from standing for prolonged periods of time." Although the opinions of treating physicians generally merit greater weight due to those physicians' longitudinal care, it is "exceedingly illogical" to grant that weight when the doctor observed the applicant for only a brief amount of time, as the ALJ noted that Dr. Johnson did. *Scheck v. Barnhart*, 357 F.3d 697, 702–03 (7th Cir. 2004); *see also White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). Further, the ALJ appropriately observed that Dr. Johnson's conclusion that her "severe debilitating illness" prevented her from standing "for prolonged periods of time" was undermined by Dornseif's own testimony at the hearing that she could stand (after the knee injury) for three to four hours at her job.

Third, Dornseif now asserts for the first time that she is obese (she says that her body mass index is 31.5), and that the ALJ did not consider her obesity as required by Social Security Ruling 02-1p, 2002 WL 34686281 (Sept. 12, 2002). But an ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work, *see Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004), and Dornseif did not mention her obesity at any juncture of her application process.

Fourth, Dornseif asserts that the ALJ failed to consider her testimony that she could not stand long enough to work full-time and that she was so exhausted after working for three to four hours that she must go home to nap. The ALJ's written opinion did note Dornseif's need for rest in between periods of standing (just not her need to nap), but concluded that her ability

to stand for two-hour intervals with a break in between did not render her disabled.  An ALJ need not specifically address every piece of evidence and testimony in her decision for it to be supported by substantial evidence. *O'Connor-Spinner*, 627 F.3d 614, 618 (7th Cir. 2010); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004).

Fifth and finally, Dornseif invokes the Equal Protection Clause in asserting that Illinois claimants like herself are disadvantaged because ALJs in Illinois, unlike their counterparts in Tennessee and Arizona, do not routinely require prehearing consultative reports to be supplemented with a Social Security Administration form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)."  *See* SSR 96-5p, 1996 WL 374183 (July 2, 1996).  But the examples cited by Dornseif fall short of showing that the Commissioner's practice is unlawfully discriminatory.

**AFFIRMED**.